JOSEPH SAGER v. NELSON TUPPER, LORENA J. TUPPER AND EDWIN H. TUPPER.

*Evidence—Weight given to conclusions of trial judge—Reversal of decree—Signatures by proxy.*

The conclusions of the trial judge as to the preponderance of evidence are entitled to respect where the testimony was taken out of court, and is evenly balanced.

A decree should not be reversed unless the appellate court is satisfied that it is wrong.

A signature to a note made in the owner's presence and by his direction is sufficient.

Appeal from Kalamazoo. Submitted January 9. Decided February 11.

FORECLOSURE. Complainant states that the mortgage was given by defendants Nelson and Lorena J. Tupper to secure two promissory notes made by Nelson and Edwin H. Tupper, one for $1100 and the other for $400. Defendants answer that the notes and mortgage were obtained as follows: Complainant desired to sell defendant Nelson Tupper a lot of old mill-irons and machinery in a saw-mill of his that had lately burned down, and it was finally agreed between them that if defendant would take them for $1100 complainant would also fur-

nish him with enough new irons and machinery to place them in good running order and would put them in a mill which defendant was to build, and would also furnish them with an oscillating pitman to run the saw in the new mill, and if the engine was insufficient to supply the necessary power, would procure a new one. He consented to take in security a mortgage on the mill for $1100, of which sum he would receive a large portion in sawing and lumber. Defendant proceeded to put up his mill, but failing to obtain the money necessary to complete it was about to abandon it when complainant promised to get the money for him if he would give him a mortgage on his land. Tupper assented, and Sager raised $400, which he proposed to include with the $1100 due for machinery, in one mortgage, but Tupper objected, finally consenting, however, in consideration of Sager's promise to release the land when the mill was completed, and to leave only the mill property encumbered. After the mill was ready for the machinery and mill-irons, Tupper gave Sager notice to furnish them, but Sager neglected to do so, and Tupper finally got them by his consent at his own expense. Sager only put in a main shaft and the oscillating pitman, which latter contrivance Tupper could not manage, and as it afterwards broke, he had to procure other machinery to replace it. Complainant alleges that Sager had brought suit at law on an alleged account containing the items for which he was secured by the notes and mortgage. See *Sager v. Tupper*, 38 Mich., 258. He also sets forth that he has done $250 worth of sawing for complainant and had asked the latter to indorse the amount upon the mortgage, but that complainant had neglected and refused to do so. He also demanded a release of the mortgage according to agreement, after the mill was in running order, but complainant had refused it. He claims that he has been injured by complainant's course to a greater amount than the indebtedness, and accordingly asks that the notes be cancelled and the mortgage discharged of record.

Defendant Edwin H. Tupper afterward asked leave to amend his answer by an averment that the notes were signed by Nelson and not by himself. The motion was denied, but at a later stage in the case was granted, and a motion by complainant to vacate the order allowing the amendment was denied. The bill was dismissed as to Edwin on the amended answer, but a decree was rendered against the other defendants for the amounts due and unpaid on the notes and mortgage, but with an allowance of $500 in recoupment of their damages. Complainant appeals.

*Edwards & Sherwood* for complainant.

*Oscar T. Tuthill* for defendants.

MARSTON, C. J. We have no doubt whatever but that Nelson Tupper signed his son Edwin's name to the notes in question, in his presence and under his direction.

As to whether Sager agreed to make any repairs to the mill-irons, or assist in putting up the mill, or to furnish an oscillating pitman and other articles, there is some doubt. The defendants testify positively that such was the agreement, and they are corroborated by a number of witnesses, and it would be very difficult indeed as to many of them to assign any motive they could have in coloring or shaping their testimony in the defendant's interest. If such was the agreement, that there was a breach thereof is clearly proved.

The complainant is very clear and positive in his statement that he made no such agreement, and he also is corroborated by reputable witnesses who testify to admissions made by the defendants.

Under such circumstances much respect and weight should be given to the opinion and conclusion of the learned circuit judge, who we may well assume was at least acquainted with some of the principal witnesses, although the evidence was not taken in open court. At all events the decree below should not be reversed unless we are satisfied that it is erroneous.

There are some things in this case which seem to lend considerable weight to the theory of the defendants. Their claim is that complainant was to furnish the machinery of the burned mill, besides other mill machinery he had in Allegan, to make a geared mill. He was also to furnish and do certain other things which need not be here enumerated.

The complainant's version was that Nelson Tupper and one Ingersoll came to him for the purpose of looking at the burnt mill-irons, with a view to a purchase thereof; that they went into the grounds and looked them over; examined the irons. "Mr. Ingersoll asked me what my price for the irons would be *as they lay on the ground. I told him I would take $1200 for them.* * * * Nelson Tupper told me before they left there that they (the Tuppers) would like to purchase the irons and build a mill on their premises, and I told him before Ingersoll if he would buy the mill-irons and put the mill on his premises, for the sake of having a mill there in the neighborhood, I would let them have it for a hundred dollars less."

There is no dispute but that eleven hundred dollars was the price agreed upon, and complainant concedes that he was to put in part of the Allegan machinery.

Complainant's version that he asked $1200 and agreed to take from defendants $100 less for the irons of the burnt mill "as they lay on the ground," is not correct. The Allegan machinery neither of defendants had at that time seen and, to say the least, it would have been somewhat difficult, with the knowledge these parties then had, to have specified what other machinery should be added, as it is conceded there was to be, except as claimed by defendants, what would be necessary to "make a geared mill."

There are many facts and circumstances pointing to a conclusion that all the machinery required for a complete mill of the kind or class to which this belonged was bargained for, and that it was not contemplated by any of the parties that the defendants would have to

purchase any other or additional machinery to complete their mill, or be at any considerable expense farther than the erection of the necessary mill building. We also think the weight of testimony shows that the idea of an oscillating pitman originated with the complainant; that he agreed to put one in, and that the one put in was a failure. Under the evidence in this case we are of opinion that the decree of the court as to this part of the agreement and the reduction to be made on account thereof, should not be disturbed. That part of the decree dismissing the bill as to Edwin Tupper must be reversed, and a decree will be entered in favor of complainant and against all the defendants, for the amount found due by the court below, with interest at ten per cent, to be paid within ———— days from the date hereof, and in default thereof that the mortgaged premises be sold, with costs to complainant.

The other Justices concurred.